UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SIMBI KESIYI WABOTE, | : | |
|     Plaintiff and Counter-Defendant, | : | |
| | : | |
| v. | : | No. 5:21-cv-2214 |
| | : | |
| JACKSON UDE, | : | |
|     Defendant and Counter-Claimant. | : | |

**O P I N I O N**
Plaintiff's Motion to Dismiss and to Strike Affirmative Defenses, ECF No. 24 – Granted
Defendant's Motion to Dismiss, ECF No. 29 – Denied

**Joseph F. Leeson, Jr.**                                                                           October 21, 2021
**United States District Judge**

### I. INTRODUCTION

Jackson Ude is a former Nigerian citizen now residing in Pennsylvania. He owns and maintains a website where he publishes Nigerian news articles. One such article accuses Simbi Kesiyi Wabote of accepting bribes and paints him as a corrupt Nigerian government official. Wabote filed suit against Ude in this Court, claiming that the article constitutes defamation.

From Ude's perspective, Wabote's lawsuit is baseless, and its true purpose is to harass Ude. For this reason, Ude filed counterclaims against Wabote alleging abuse of process, intentional infliction of emotional distress, and negligence.

Both parties then filed motions to dismiss the others' claims. For the reasons below, the Court denies Ude's motion and grants Wabote's motion.

## II. BACKGROUND

### A. Alleged Facts[1]

Wabote resides in Nigeria and serves on the Nigerian Content Development and Monitoring Board (the Board). *See* Amend. Compl. ¶ 11, ECF No. 3. The Board oversees compliance with Nigerian policy that encourages participation of Nigerian ventures and workforce in the oil sector. *See id*. ¶ 12. It reviews "Content Plans" for technical compliance but does not set policy, manage projects, or award contracts. *See id*. ¶ 13. Wabote's role on the Board as Executive Secretary is a non-elected position. *See id*. ¶ 14. He does not have any enforcement authority. *See id*. Nor does he have regular access to the press or media. *See id*. ¶¶ 15–16.

Ude is a former resident of Nigeria now living in Reading, Pennsylvania. *See id*. ¶ 6. He operates an online blog at pointblanknews.com (the Blog). *See id*. ¶ 17. The Blog proclaims to be a Nigerian news platform and boasts that it receives "fifty thousand unique visitors daily," most of which come from Nigeria. *See id*. ¶¶ 17, 21. To date, Nigerian courts have found the Blog liable for approximately $263,000 in damages for publishing defamatory articles. *See id*. ¶ 19.

On February 10, 2021, Ude published an article on the Blog titled, in part, "Wabote Also Fingered With $2million Bribe" (the Article). The Article contains the following statements:

- Also caught in the web of the Bonny NLNG kickback scandal is the Executive Secretary of the Nigerian Local Content Board, Engr. Simbi Wabote, who allegedly collected $2million from a Kelvion, a German equipment manufacturing company.

---

[1] The facts of this section are taken largely from the Amended Complaint and accepted as true, with all reasonable inferences drawn in Wabote's favor for purposes of deciding Ude's Motion to Dismiss. *See Lundy v. Monroe Cty. Dist. Attorney's Office*, No. 3:17-CV-2255, 2017 WL 9362911, at *1 (M.D. Pa. Dec. 11, 2017), *report and recommendation adopted*, 2018 WL 2219033 (M.D. Pa. May 15, 2018). The Court's recitation of the facts does not include legal conclusions or contentions unless necessary for context. *See Brown v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, No. 1:19-CV-1190, 2019 WL 7281928, at *2 (M.D. Pa. Dec. 27, 2019). For purposes of deciding Wabote's Motion to Dismiss, the Court accepts as true all facts alleged by Ude in the Counterclaim. *See* Counter., ECF No. 14.

- Wabote allegedly gave a waiver to the German company to export its equipment into Nigeria for the bonny LNG train 7 project against the Nigeria local content policy and against protests from Nigeria local equipment manufacturers.
- According to sources as soon as Wabote who heads the Local Content Board heard about the kickbacks to Sylva, he devised his own means, fired a letter to Saipem in October 2020, raising concern over noncompliance to Local Content Laws.
- Saipem, which had subcontracted Kelvion for equipment, swiftly directed them to deal with the Local Content boss. Sources said the German Company and Saipem paid a kickback of $2million to continue importations of equipment and materials from Germany.
- According to the group, the alleged fraud and wanted disregard for local content laws by Saipem is enabled by the [Board] boss, Wabote.

*See id.* ¶ 25 (i–v).

Ude also published the Article on Twitter. *See id.* ¶ 31. In response, Wabote sent Ude a cease-and-desist letter, outlining the falsehoods in the Article and demanding its removal. *See id.* ¶ 32. Instead of removing the Article, Ude made the following post on Twitter:

> After collecting $5million bribe from Kelvion to circumvent Nigeria's local content Laws, Simbi Wabote, ES of [the Board] hires a lawyer to sue but suing the wrong company, wrong persons. This is how you know looting can make people stupid!

*See id.* ¶ 33.

### B. Procedural History

The procedural history of this case is somewhat complicated with both parties bringing claims against the other, and both parties filing motions to dismiss.

Wabote filed an Amended Complaint with the Court on May 18, 2021. *See id.* The Amended Complaint asserts that the Article and Ude's twitter posts constitute defamation per se. *See id.* ¶¶ 36–43. Pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, the Amended Complaint also provides notice that Wabote intends "to rely on Nigeria's civil defamation and libel law, including Nigeria's common-law and caselaw." *Id.*

Ude failed to answer the Amended Complaint within the required time frame. However, the parties stipulated to an extension, giving Ude more time to file a response to the Amended Complaint. *See* ECF No. 9. The Court granted the stipulation in part, and issued an Order on June 28, 2021, which stated that Ude's "deadline to file an Answer to [the Amended Complaint], only, and for no other purpose, is extended through and including July 12, 2021." *Id.* In compliance with the June Order, Ude filed with the Court an Answer and Counterclaim on July 12, 2021. *See* Counter., ECF No. 14.

The Counterclaim asserts the following claims against Wabote based on the filing of the Amended Complaint: Abuse of Process (Count I); Intentional Infliction of Emotional Distress (Count II); and Negligence (Count III). *See id.* According to the Counterclaim, Wabote filed the Amended Complaint with ulterior motives to harass Ude, and Ude has suffered emotional distress as a result. *See generally* Counter. The Counterclaim also raises a smorgasbord of affirmative defenses, including forum non conveniens and each defense under Rule 12(b) of the Federal Rules of Civil Procedure.[2] *Id.*

After filing the Counterclaim, Ude filed with the Court a Motion to Dismiss the Amended Complaint and a memorandum in support. Ude's Mot., ECF No. 29, 29-1. Ude's Motion essentially elaborates on the many defenses raised in the Counterclaim. *See id.* Wabote filed with the Court a response to Ude's Motion, Wabote's Resp., ECF No. 37, and Ude filed with the Court a reply. Ude's Rep., ECF No. 41.

In addition, Wabote filed his own motion to dismiss the Counterclaim and a supporting memorandum. Wabote's Mot., ECF No. 24, 24-1. Wabote's Motion asserts that the Counterclaim

---

[2] Rule 12(b) of the Federal Rules of Civil Procedure provides for the following defenses: "(1) lack of subject-matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; (4) insufficient process; (5) insufficient service of process; (6) failure to state a claim upon which relief can be granted; and (7) failure to join a party under Rule 19." *Id.* 12(b)(1)–(7).

fails to state a claim. *See id.* 2. It also moves the Court to strike many of the affirmative defenses raised in the Counterclaim, including lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and Ude's reliance on the Alien Tort Statute (the ATS). *See id.* 1. Ude filed a response and supporting memo to Wabote's Motion. Ude Resp., ECF No. 30, 36. Wabote filed a reply. Wabote Rep., ECF No. 43. Finally, Ude filed a sur-reply.[3] ECF No. 34. Both motions are now ready to be decided by the Court.

### III.   LEGAL STANDARDS AND ANALYSIS

#### A.   Ude's Motion to Dismiss

Ude's Motion throws everything and the kitchen sink at the Amended Complaint. However, the arguments made in Ude's Motion lack merit. The Court addresses and dismisses each of the arguments in turn.

##### 1.   *The Court has subject matter jurisdiction over Wabote's claim.*

Ude's Motion first asserts that the Amended Complaint should be dismissed because this Court lacks subject matter jurisdiction over Wabote's defamation claim. *See* Ude's Mot. 9. Federal courts have limited jurisdiction, and the "[Plaintiff] bears the burden of demonstrating subject matter jurisdiction." *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009). Jurisdiction through diversity is one way for a plaintiff to bring a case in federal court. *See* 28 U.S.C. § 1332(a). For diversity jurisdiction to exist, the plaintiff must show two things. First, the amount in controversy must exceed $75,000. *See id.* This requirement is met when the plaintiff's request for relief is greater than $75,000, and it is not "a legal certainty that the plaintiff cannot recover" the necessary amount. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). Second,

---

[3]   The Court does not address in this Opinion the arguments made in Ude's sur-reply because they lack merit. *See Argonaut Ins. Co. v. I.E., Inc.*, No. CIV. A. 97-4636, 1999 WL 163639, at *2 (E.D. Pa. Mar. 22, 1999) ("it is entirely within the Court's discretion as to whether replies and sur-replies will be considered").

the suit must be between citizens of different states or "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). For individuals, their citizenship is where they are domiciled. *See Messick v. S. Pa. Bus Co.*, 59 F. Supp. 799, 800 (E.D. Pa. 1945) ("Citizenship and domicile are substantially synonymous terms and, with respect to the jurisdiction of federal courts, domicile is the test of citizenship." (citing, *inter alia*, *Bjornquist v. Bos. & A.R. Co.*, 250 F. 929, 933 (1st Cir. 1918)).

Ude's Motion asserts that this Court lacks subject matter jurisdiction in this case for a variety of reasons. First, it argues that this Court lacks subject matter jurisdiction because Wabote's injuries occurred in Nigeria. *See* Ude's Mot. 9–12. Second, it argues that this Court lacks subject matter jurisdiction because the Article was not directed at this forum. *See id.* Third, it argues that this Court lacks subject matter jurisdiction because Wabote did not bring his defamation claim under the ATS.[4] *See id.* 13. These arguments are misplaced; they either go towards personal jurisdiction or are not applicable in this case. Ude's Motion does not make any arguments that address the true test for whether this Court has subject matter jurisdiction through diversity.

In addition to punitive and exemplary damages, Wabote seeks damages not less than $10,000,000. *See* Amend. Compl. ¶ 44. This is clearly above the $75,000 threshold, and it is not a legal certainty that Wabote cannot recover the necessary amount. The first element for diversity jurisdiction is therefore satisfied. Moreover, complete diversity of citizenship exists between Wabote and Ude; Wabote is a citizen of Nigeria, and Ude is a citizen of Pennsylvania. The second element for diversity jurisdiction is therefore satisfied. As a result, this Court has subject matter jurisdiction over Wabote's claim by way of diversity.

---

[4]     The Court addresses this argument further below. *See infra* III.B.2.

### 2.     *The Court has personal jurisdiction over Ude.*[5]

Ude's Motion next asserts that the Amended Complaint should be dismissed because this Court lacks personal jurisdiction over Ude. *See* Ude's Mot. 17. Personal jurisdiction refers to a court's ability to exercise control over a defendant based on "the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1779 (2017) (citing, *inter alia*, *Walden v. Fiore*, 571 U.S. 277, 283 (2014)). There are two types of personal jurisdiction—general and specific. *See id.* Specific jurisdiction requires that the plaintiff's claim "arise out of or relate to the defendant's contacts with the forum." *Id*. (cleaned up). General jurisdiction, however, gives a State the authority to exercise jurisdiction over any individual who is domiciled in the State. *Id*. "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Id*. (emphasis in original) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 918 (2011)). A federal court's personal jurisdiction reaches as far as the State in which the federal court sits. *See* Fed. R. Civ. P. 4(k)(1)(A).

Ude's Motion asserts that this Court lacks personal jurisdiction because Ude did not direct the Article to Pennsylvania and because Wabote's injuries occurred in Nigeria. *See* Ude's Mot. 17–19. While this argument might support a finding that this Court lacks specific personal jurisdiction in this case, it does not negate general jurisdiction. As a citizen domiciled in Pennsylvania, Ude is subject to the State's general jurisdiction. *See* 42 Pa. C.S. § 5301(a)(1)(ii) (granting the

---

[5]     Wabote's Response asserts that Ude waived this defense and other defenses provided by Rule 12(b) because the Court's June Order stated that "Defendant's deadline to file an Answer to Plaintiff's Complaint, only, and for no other purpose, is extended." Wabote's Resp. 4. However, Rule 12(b) defenses may be raised in an answer. *See In re Arthur Treacher's Franchise Litig.*, 92 F.R.D. 398, 413 (E.D. Pa. 1981) ("[T]he Court holds that defendant's filing of an answer which raises the defense of lack of personal jurisdiction prior to the filing of a Rule 12(b)(2) motion does not remove this motion from consideration by the Court on the ground that it is untimely."). For this reason, the Court addresses the merits of these defenses.

Commonwealth general jurisdiction over individuals who are "[d]omicile[d] in this Commonwealth at the time when process is served"). Since this Court's jurisdiction reaches as far as the State in which it sits, and this Court sits in Pennsylvania, it follows that this Court has general jurisdiction over Ude, which means it may "hear 'any and all claims' against" him, *Skidmore v. Led Zeppelin*, 106 F. Supp. 3d 581, 585 (E.D. Pa. 2015) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)), including Wabote's defamation claim.

### 3.     *Venue is proper.*

Ude's Motion also asserts that the Amended Complaint should be dismissed because venue is improper. *See* Ude's Mot. 14–17. To support this, Ude's Motion essentially recycles the same argument it made for lack of personal jurisdiction. *Id.* Since this Court has determined that it has personal jurisdiction over Ude, venue is proper in this case in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391 (b)(1). Ude is the only defendant, and he resides in this district. Venue is therefore proper.

### 4.     *Forum non conveniens does not warrant dismissal.*

Even though this Court has both subject matter and personal jurisdiction in this case, and that venue is proper, Ude's Motion asserts that this Court should still dismiss the Amended Complaint under the doctrine of forum non conveniens. *See* Ude's Mot. 20–21.

Under the doctrine of forum non conveniens, a court may dismiss a claim it has jurisdiction over when "trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981). In the Third Circuit, courts consider four factors when ruling on a motion to dismiss based on forum non conveniens: "(1) the availability of an alternative forum; (2) the amount of deference to be accorded to the plaintiff's

choice of forum; (3) the private interest factors; and (4) the public interest factors." *Tech. Dev. Co. v. Onischenko*, 174 F. App'x 117, 119–20 (3d Cir. 2006) (citing *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 633 (3d Cir. 1989)). "[T]he defendant bears the burden of persuasion" in a forum non conveniens analysis. *Id*. at 119 (citing *Lony*, 886 F.2d at 632).

Regarding the first factor—availability of an alternative forum—"this requirement is usually satisfied where the defendant is amenable to process in the other jurisdiction." *Id.* at 120 (cleaned up) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.22 (1981)). Ude's Motion argues that Nigeria is a better forum for this case but does not put forward any specific reasons as to why. Wabote's Response on the other hand, puts forward at least one persuasive argument as to why Nigeria is not available as an alternative forum; it suggests that Ude is not amenable to process in Nigeria. Specifically, Wabote's Response points out that Nigerian courts have already entered damages against the Blog but that Ude uses his residency in the U.S. to shield himself from those judgments. *See* Wabote's Resp. 8–9. Moreover, Ude does not agree to litigate the case in Nigeria. Despite the assertion made in Ude's Motion that Nigeria is an available alternative forum, Ude's Motion provides no rationale to persuade the Court that such is the case. The first factor therefore weighs in favor of retaining jurisdiction.

Regarding the second factor—the amount of deference to be accorded to the plaintiff's choice of forum—while a plaintiff's choice of forum normally receives great deference, this Court gives "potentially less" deference to Wabote's choice of forum because he is a foreign plaintiff. *Tech. Dev. Co.*, at 120 (citing *Piper* at 255–56). "[T]he reason for giving a foreign plaintiff's choice less deference is not xenophobia, but merely a reluctance to assume that the choice is a convenient one." *Lony*, 886 F.2d at 634. However, reluctance to give deference to a foreign plaintiff's choice of forum can "be overcome by a strong showing of convenience." *Id.* Here, Wabote's Response argues that Pennsylvania is a convenient forum because Ude resides in Pennsylvania and because Ude

engaged in the defamatory conduct in Pennsylvania. *See* Wabote's Resp. 8. This demonstrates at least some convenience. For this reason, while the Court does not put Wabote on the same footing as a domestic plaintiff, it does give his choice of forum more deference than the average foreign plaintiff. *See Lony*, 886 F. 2d at 634 (holding that a "district court must indicate" how much deference it gives to a foreign plaintiff's choice of forum (citing *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 45 (3d Cir. 1988))). What's more, this case does not involve the usual facts where a defendant seeks dismissal under forum non conveniens for being "sued far from home." *Tech. Dev. Co.,* 174 Fed. Appx at 122. Instead, Ude's Motion argues that it would be more convenient for Ude to litigate on a different continent than in his home neighborhood. The Court finds this difficult to believe, and Wabote's decision to sue Ude in his "home forum [is] itself a factor suggesting that [Wabote's] decision was based on convenience rather than some ulterior motive." *Id*. (citing *Lony*, 935 F. 2d at 608). The second factor therefore weighs in favor of retaining jurisdiction.

    Regarding the third and fourth factors—private and public interest—Ude's Motion argues that these factors favor dismissal because Nigeria has a local interest in deciding the matter. *See* Ude's Mot. 21. It also points out that trying the case in Pennsylvania would cause some confusion if Nigeria law is applied. *See id.* However, the Court is not persuaded by these undeveloped arguments because they do not establish a "'strong preponderance in favor of dismissal.'" *Lewis v. Lycoming*, 917 F. Supp. 2d 366, 371 (E.D. Pa. 2013) (quoting *Lacy*, 932 F. 2d at 179). Even if the Court gave Ude the benefit of the doubt, "dismissal is not appropriate just because the private and public factors do not favor *retaining* jurisdiction." *Tech. Dev. Co.,* 174 Fed. Appx. at 123 (emphasis in original) (citing *Lony*, 886 F. 2d at 635). The third and fourth factors therefore do not weigh heavily in favor one way or the other.

    In sum, the first two factors weigh in favor of retaining jurisdiction, and Ude has not met his burden of showing that factors three and four support dismissal. Considering this, and the fact that

this Court "'will not lightly disturb plaintiff's choice of forum,'" *Lewis*, 917 F. Supp. 2d at 371 (quoting *Lacy*, 932 F. 2d at 179), this Court finds that forum non conveniens does not warrant dismissal of the Amended Complaint.

### 5. *Wabote sufficiently pled his claim of defamation.*

Next, Ude's Motion asserts that the Amended Complaint should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Ude Mot. 21. When ruling on a motion to dismiss under Rule 12(b)(6), this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (cleaned up). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Additionally, when ruling on a motion to dismiss, the Court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputed authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F. 3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus. Inc.*, 998 F. 2d 1192, 1196 (3d Cir. 1993)).

Once again, the argument in Ude's Motion here focuses entirely on the fact that the Article was not directed at this forum, and that Wabote's injuries occurred in Nigeria. *See* Ude Mot. 21–24. While this argument may pertain to specific personal jurisdiction, it does not shed any light on how the Amended Complaint supposedly failed to sufficiently plead defamation. Indeed, the Amended Complaint sufficiently pleads each element of defamation.[6] As a result, Wabote's claim survives Ude's Motion to dismiss for failure to state a claim.

### 6.   *Ude waived the remaining 12(b) defenses.*

In addition to the defenses discussed above, the Counterclaim lists the remaining defenses provided under Rule 12(b) in conclusory, boilerplate type language: insufficient process; insufficient service of process; and failure to join a party under Rule 19. *See* Counter. ¶¶ 5, 6, 8. However, Ude's Motion does not mention these defenses again. Nor are these defenses mentioned in Ude's Reply. As a result, the Court finds these defenses to be "[t]hrow-away arguments left undeveloped [and they] are also considered waived." *Markert v. PNC Fin. Servs. Grp., Inc.*, 828 F. Supp. 2d 765, 773 (E.D. Pa. 2011) (citing *Aiellos v. Zisa*, No. 2:09–3076, 2010 WL 421083, at *3 (D.N.J. Feb. 2, 2010)).

Having dismissed Ude's Motion in its entirety, the Court will now address Wabote's Motion.

---

[6]   Under Pennsylvania law, a prima facie case of defamation includes seven elements: "(1) the defamatory nature of the communication; (2) publication by the defendant; (3) the application of the communication to the plaintiff; (4) a recipient's understanding of the communication's defamatory meaning; (5) a recipient's understanding that the communication was intended to apply to plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion." *Franklin Prescriptions, Inc. v. The New York Times Co.*, 267 F. Supp. 2d 425, 434 (E.D. Pa. 2003) (quoting *Fanelle v. Lojack Corp.*, No. Civ.A.99–4292, 2000 WL 1801270, at *2 (E.D.Pa. Dec. 7, 2000)).

### B.     Wabote's Motion to Dismiss and Strike Certain Affirmative Defenses

Wabote's Motion contends that each claim in the Counterclaim should be dismissed for failure to state a claim. *See* Wabote's Mot. 3. It also moves this Court to strike certain affirmative defenses raised in the Counterclaim. *See id.* 7.

#### *1.     Failure to State a Claim Under Rule 12(b)(6) – Review of Applicable Law*

Having already laid out the standard for ruling on a motion to dismiss under Rule 12(b)(6), *see* supra III.A.4, the Court will not belabor it here. The Court emphasizes only that a complaint "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545. With that in mind, the Court discusses each of Ude's counterclaims in turn.

##### i.     **Abuse of process: Ude failed to sufficiently plead his claim.**

Wabote's Motion asserts that Ude's abuse of process claim should be dismissed because the Counterclaim fails to allege the required elements for such a claim. *See* Wabote's Mot. 3. "To state a proper claim for abuse of process under Pennsylvania law, a plaintiff must allege that: (1) the defendant used a legal process against the plaintiff; (2) the action was primarily to accomplish a purpose for which the process was not designed; and (3) harm was caused to the plaintiff." *Peek v. Whittaker*, No. 2:13-CV-OI188, 2014 WL 2154965, at *6 (W.D. Pa. May 22, 2014) (citing *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. Ct. 1993)). An abuse of process claim "does not lie where the defendant simply had cruel intentions or acted from spite or with an ulterior motive." *Id*. at *7 (cleaned up). "[T]here must be an act or threat not authorized by the process, or the process must be used for an illegitimate aim such as extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action." *Al Hamilton Contracting Co. v. Cowder,* 644 A.2d 188, 192 (Pa. Super. Ct. 1994) (citing *Rosen v. Tesoro Petroleum Corp.*, 582 A.2d 27, 32–33 (Pa. Super. Ct. 1990).

Wabote's Motion argues that the Counterclaim fails to sufficiently allege the first element. *See* Wabote's Mot. 3–4. According to Wabote's Motion, an abuse of process claim lies only when a plaintiff perverts a process *after* it has already been initiated. *See id*. 3. It argues that Ude's abuse of process claim is improper because the suit has only just begun. *See id*. Essentially, Wabote's Motion suggests that a proper claim would have been for malicious prosecution, not abuse of process. *See id*. 4.

The Court acknowledges that the difference between abuse of process and malicious prosecution is somewhat murky. For example, Pennsylvania state courts "have drawn a distinction between actions for abuse of legal process and those for malicious prosecution, which, when founded on civil prosecutions, are usually described as malicious use of civil process." *Dumont Television & Radio Corp. v. Franklin Elec. Co. of Phila*., 154 A.2d 585, 587 (Pa. 1959); *see also Mcgee v. Feege*, 535 A.2d 1020, 1024 (Pa. 1987). For a time, "[malicious] use ha[d] to do with the wrongful initiation of civil process, as contrasted with abuse, which [was] concerned with perversion after litigation ha[d] begun." *See Dumont*, 154 A.2d at 587. However, the Third Circuit has stated that, at least to some degree, the distinction between these claims lost its importance when the Dragonetti Act was adopted. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 394 (3d Cir. 2002) ("Whatever may have been the importance of that distinction before the Dragonetti Act was adopted, it appears that both torts are subsumed within the general scope of the Act, which includes persons who take part in the procurement, initiation or continuation of civil proceedings for wrongful purposes." (citing 42 Pa.C.S.A. § 8351(a))).

The Dragonetti Act codified "the common law cause of action for malicious use of civil proceedings." *Peek v. Whittaker*, No. 2:13-CV-OI188, 2014 WL 2154965, at *4 (W.D. Pa. May 22, 2014); 42 Pa. Cons. Stat. § 8351(a), (a)(1). Nevertheless, under Pennsylvania law, a plaintiff may still bring a claim of abuse of process under the Dragonetti Act or under the common law. *See U.S.*

*Express Lines Ltd.*, 281 F.3d at 392 ("[Plaintiffs] rely on Pennsylvania's Dragonetti Act, 42 Pa.C.S.A. § 8351 et seq., and common law, both of which provide a cause of action for the wrongful use of civil proceedings."). Moreover, a claim for abuse of process is "a tort that may arise at any time during the proceedings." *Langman v. Keystone Nat'l Bank & Tr. Co.*, 672 F. Supp. 2d 691, 697 (E.D. Pa. 2009) (citing *U.S. Express Lines, Ltd. v. Higgins*, 281 F. 3d 383, 394 (3d Cir. 2002)).

However, just days after the Third Circuit opined on the difference between these two claims, a Pennsylvania state court held that the "torts of malicious prosecution and abuse of process are separate and distinct but often confused." *Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa. Super. Ct. 2002) (citing *Cowder*, 644 A.2d at 191). The *Werner* court explained that "[a]buse of process is, in essence, the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *Id*. (citing *McGee*, 535 A.2d at 1026). Malicious prosecution, on the other hand, "is a tort which arises when a party institutes a lawsuit with a malicious motive and lacking probable cause." *Id.* (citing *Hart v. O'Malley*, 781 A.2d 1211, 1219 (Pa. Super. Ct. 2001)).

As late as 1992, the Pennsylvania Supreme Court expressly held that "[a]buse of process differs from malicious prosecution." *Matter of Larsen*, 616 A.2d 529, 592 (Pa. 1992), *superseded on other grounds as stated in In re Angeles Roca First Jud. Dist. Philadelphia Cnty.*, 173 A.3d 1176, 1184 (Pa. 2017). The Pennsylvania Supreme Court later discussed the *Werner* court's decision in 2006 and did not take issue with its interpretation of the two claims. *See generally id.* Since federal courts "apply existing state law as interpreted by the state's highest court," *Koppers Co., Inc. v. Aetna Cas. and Sur. Co.*, 98 F. 3d 1440 (3d Cir. 1996) (citing *Kowalsky v. Long Beach Township*, 72 F. 3d 385, 388 (3d Cir. 1995)), this Court feels confident in following the most recent case law from the Pennsylvania Supreme Court and therefore dismissing Ude's abuse of process

claim for the reasons Wabote's Motion suggests. Nonetheless, even assuming that the distinction no longer exists, Ude fails to sufficiently plead his claim for abuse of process.

The Counterclaim alleges that Wabote brought a lawsuit against Ude to harass him and that Ude has suffered financially and emotionally as a result. *See* Counter. ¶¶ 16–17. However, these are simply conclusory statements, which are not supported by any additional factual allegations. Indeed, any person on the receiving end of a lawsuit could make the same conclusory statements. Even if Wabote filed the Amended Complaint with malice, that would not be enough to support an abuse of process claim. *See Peek*, No. 2:13-CV-OI188, 2014 WL 2154965, at *7 (explaining that an abuse of process claim does not lie just because the other party "had cruel intentions or acted from spite or with an ulterior motive."). Moreover, it does not appear that the Amended Complaint lacks probable cause; Wabote filed the Amended Complaint in response to the Article, which specifically mentions Wabote by name. The Court also finds it unlikely that Wabote would bring a lawsuit against Ude from halfway around the world for the sole purpose of harassing Ude, and the Court cannot make that inference in Ude's favor using the bare conclusory statements in the Counterclaim. In other words, the Counterclaim simply gives a "formulaic recitation of" the necessary elements. *See Twombly*, 550 U.S. at 545. For this reason, Ude's abuse of process claim is dismissed without prejudice.[7]

---

[7]    *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile"). The Counterclaim is Ude's first attempt at bringing his claims, and there is nothing to suggest that Wabote will be prejudiced by allowing Ude an opportunity to amend. *See Cornell & Co. v. OSHRC*, 573 F.2d 820, 823 (3d Cir. 1978) ("It is well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment." (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971))).

### ii.    IIED: Ude failed to sufficiently plead his claim.

Wabote's Motion next asserts that Ude's claim of intentional infliction of emotional distress (IIED) should be dismissed because the Counterclaim fails to allege any facts to support the claim. *See* Wabote's Mot. 5. "An action for [IIED] requires a plaintiff to show that (1) the conduct is extreme; (2) the conduct is intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress is severe." *Kornegey v. City of Philadelphia*, 299 F. Supp. 3d 675, 683 (E.D. Pa. 2018) (citing, *inter alia*, *Arnold v. City of Philadelphia*, 151 F. Supp. 3d 568, (E.D. Pa. 2015)). "To state a claim for IIED in Pennsylvania, a plaintiff must demonstrate that the defendant's conduct was 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society.'" *Id.* (quoting *McGreevy v. Stroup*, 413 F.3d 359, 371 (3d Cir. 2005)).

The only conduct that the Counterclaim attributes to Wabote is that he filed a lawsuit against Ude. The Court is not aware of any case law supporting the proposition that bringing a lawsuit alone is enough to constitute the type of outrageous behavior required for an IIED claim, and Ude does not cite to any authority supporting this argument. The Court will not go so far as to say that the filing of a complaint can *never* be grounds for an IIED claim; in theory, it is possible that a case could exist where the act of bringing a lawsuit would be "utterly intolerable in a civilized society." *Id*. However, the Court does find that this is not that case (if one could exist). Even construing the alleged facts liberally in Ude's favor, the Counterclaim simply does not allege facts sufficient to support a claim that Wabote's lawsuit goes "beyond all possible bounds of decency." *Id.* Ude's claim of IIED is therefore dismissed without prejudice.

### iii.    Negligence: Ude failed to sufficiently plead his claim.

Wabote's Motion also asserts that Ude's negligence claim should be dismissed because the Counterclaim fails to allege any facts to support the claim. *See* Wabote's Mot. 6. "Negligence

requires the plaintiff establish four elements: 1) the defendant owed the plaintiff a duty; 2) the defendant breached the duty; 3) the plaintiff suffered actual harm; and 4) a causal relationship existed between the breach of duty and the harm." *Adams v. Wells Fargo Bank, N.A.*, No. CV 16-0907, 2017 WL 6619015, at *2 (E.D. Pa. Dec. 27, 2017) (citing *Freed v. Geisinger Med. Ctr.*, 910 A.2d 68, 72 (Pa. Super. Ct. 2006)).

Ude's negligence claim does not make it past the first element. Other than stating a legal conclusion that Wabote owes a duty to Ude, the Counterclaim "fails to identify a legally cognizable duty owed by" Wabote to Ude. *Id.* Ude's negligence claim is therefore dismissed without prejudice.

### 2. *Motion to Strike – Review of Applicable Law*

Wabote's Motion next moves the Court to strike the following affirmative defenses raised in the Counterclaim: lack of personal jurisdiction; improper venue; and reliance on the ATS. *See* Wabote's Mot. 7–9. Having already dismissed the first two defenses, the Court need only address the third.

Under Rule 12(f) of the Federal Rules of Civil Procedure, a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "In order to succeed on a motion to strike, the moving party must show that the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense and that the moving party is prejudiced by the presence of the allegations in the pleading." *Great W. Life Assur. Co. v. Levithan*, 834 F. Supp. 858, 864 (E.D. Pa. 1993).

Ude's Motion argues that Wabote should have brought his claim of defamation under the ATS and that the ATS "does not apply extraterritorially." Ude's Mot. 13. However, Ude's interpretation of the ATS does not square with relevant precedent.

The ATS states, "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."

28 U.S.C. § 1350. "Congress drafted the ATS 'to furnish jurisdiction for a relatively modest set of actions alleging violations of the law of nations.'" *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1397 (2018) (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 720 (2004)).

The ATS is unrelated to Wabote's claim. Wabote does not need to bring his claim of defamation under the ATS because he is not claiming that Ude violated the law of nations or a treaty of the United States. As was already determined, this Court has subject matter jurisdiction over Wabote's defamation claim by way of diversity, so he need not rely on the ATS for this Court to consider the claim. Any further effort spent litigating the matter would prejudice Wabote because the ATS simply does not apply here. Ude's argument pertaining to the ATS is impertinent. For these reasons, the Court strikes this affirmative defense.

## IV. CONCLUSION

For the reasons discussed herein, Ude's motion to dismiss the Amended Complaint is denied. Wabote's motion to dismiss the Counterclaim is granted.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge