**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SIMBI KESIYI WABOTE,<br>Plaintiff,<br><br>v.<br><br>JACKSON UDE,<br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>: | No. 5:21-cv-2214 |

**O P I N I O N**

**Joseph F. Leeson, Jr.**
**United States District Judge**

**March 8, 2022**

## I. INTRODUCTION

This is a defamation case in which Simbi Wabote alleges that Jackson Ude published a false article about him on a website called Point Blank News. Before the Court now is the parties' dual requests for sanctions. Both parties argue that the other should be sanctioned for their behavior during Ude's deposition.

The Court gave both parties an opportunity to submit briefs on the matter and heard oral argument. The Court considered the briefs and arguments and thoroughly reviewed the transcript of Ude's deposition.

The Court determines that Ude's Counsel[1] and Ude's behavior frustrated the purpose of Ude's deposition and that they conducted themselves in a manner contrary to the Court's prior discovery order. As a result, it imposes monetary sanctions on Ude's Counsel and Ude himself. It also orders Ude to submit to another deposition at the option of Wabote.

[1] For purposes of this Opinion, "Ude's Counsel" refers to Benneth Amadi. Any reference to "Wabote's Counsel" means Michael Cilento.

## II. RELEVANT BACKGROUND

Since this Opinion is written primarily for the parties to this case, the Court gives only the background that is needed to analyze the parties' dual requests for sanctions.[2]

***Ude's First Deposition***

Ude, a Pennsylvania resident, publishes articles touching on Nigerian news topics through Point Blank News, which is an online blog. One such article claims that Wabote, a Nigerian government official, uses his position for personal gain and that he accepted a multimillion-dollar bribe. The article also identifies Timpre Sylva as a corrupt public servant.[3] Wabote sued Ude for defamation, alleging that the article is false. Ude filed an answer, and the parties engaged in discovery.

During discovery, the parties sent numerous letters to the Court complaining about the other party's misbehavior. To date, the Court has held more than five telephone conferences with the parties to resolve discovery disputes. After several of these disputes were resolved, the parties scheduled a deposition for Ude.

During Ude's deposition, he revealed that Point Blank News had multiple editors who may have worked on the article at issue. Counsel for Wabote asked Ude who the editors were, but he refused to answer:

Q. Who decides what stories Point Blank News will publish?
A. All the editors.
Q. How many editors?
A. Three editors, four editors.
Q. That's including you?

---

[2] See the Court's prior opinion issued in this case for a more detailed background of the facts and claims. *See Wabote v. Ude*, No. 5:21-CV-2214, 2021 WL 4901809 (E.D. Pa. Oct. 21, 2021).

[3] Sylva brought his own suit of defamation against Ude as well, which is currently being litigated in this Court. *See Sylva v. Ude*, No. 5:21-CV-04102, 2022 WL 327204 (E.D. Pa. Feb. 3, 2022).

A. Yes. Including me, yes.

Q. The other editors are in Nigeria?

A. Yes.

Q. What are their names?

A. I'm sorry. I won't be able to reveal their names. Just like I said, I'm trying to keep them safe from being harmed.

*See* First Depo. 30:2-15, ECF No. 88-1.

Ude also revealed that other reporters at Point Blank News may have contributed to the article. Counsel for Wabote asked who the reporters were, but Ude's Counsel objected to the question. Again, Ude refused to answer:

Q. What's the name of the person that sent this to you?

A. That's a journalist. Reporter.

Q. What's that person's name?

A. I'm not going to say his name. I can't reveal his name.

Q. Why not?

A. He has not authorized me to do that. He didn't ask me to reveal his name.

Q. But I'm asking you to reveal his name.

A. I can't do that without taking his consent.

Q. Why is that?

A. Because I didn't know a question of me revealing his name would come up. It's not -- he's not supposed to be in the case here.

Q. You got this document from him?

MR. AMADI: I will object. You know, I will object --

MR. CILENTO: Then object. That's it.

MR. AMADI: The information there -- the information there, they are his information.

*Id.* 100:2-101:3.

Counsel for Ude continued to object throughout the deposition, and Counsel for Wabote told Ude's Counsel that he should not make speaking objections. For example,

Q. There was no message of a $5 million dollar bribe in this story, is there?

> MR. AMADI: Objection. You're interpreting it out of context. He said actually, kind of --
>
> MR. CILENTO: Benneth -- okay, you cannot keep giving explanations. If you object, just object.
>
> MR. AMADI: I object.
>
> MR. CILENTO: That's fine.
>
> MR. AMADI: Your question is misleading.
>
> MR. CILENTO: Okay. That's a fine objection. But please don't say more than that, because that can be interpreted as coaching the witness, which is not allowed.
>
> MR. AMADI: I'm not coaching. Your question is leading.
>
> MR. CILENTO: So say objection; misleading. That's it. You don't have to say more than that, because your objection is noted. Okay.

*Id.* at 61:23-62:19.

Despite the ongoing objections, and Ude's refusal to answer questions regarding editors and reporters, Wabote's Counsel continued with his questions and eventually finished the deposition.

***The Discovery Order***

Following Ude's first deposition, Wabote filed a letter-brief with the Court along with the transcript of the deposition. In his letter-brief, Wabote asked the Court to compel Ude to answer the questions that he had refused to answer during the first deposition. Wabote also asked the Court to sanction Ude and Ude's Counsel for their behavior during the deposition.

Ude filed his own letter-briefs with the Court, in which he alleged that Wabote had not fully complied with a prior discovery order and asked that the Court sanction Wabote. Ude also denied that he had engaged in any misbehavior during the first deposition. Instead, he asked the Court to award him attorney's fees and costs because Wabote's request was meritless.

Ude pointed to Pennsylvania's Shield Law to justify his refusal to answer questions during the first deposition. The Shield Law protects the disclosure of the identity of confidential sources and information that would reveal a confidential source's identity. *See* 42 Pa. Stat. § 5942.

According to Ude, the reporters who worked on the article were also sources for the article. Thus, he did not need to reveal their identities because the information was protected by privilege.

In addition to accepting letter-briefs from the parties, the Court also heard oral argument on the matter. After considering the parties' briefs and oral arguments, the Court issued a discovery order (the Discovery Order). *See* Disc. Ord., ECF No. 97.

In the Discovery Order, the Court denied each of Ude's requests. It also denied Wabote's request for sanctions. It did, however, direct Ude to appear for a second deposition and ordered Ude "to answer all questions . . . unless specifically told not to by his counsel." *Id.* The Court further reminded Ude's Counsel that if he made objections, it should be for form only because the parties had stipulated that all other objections were reserved for trial. *See id.* It also prohibited Ude's Counsel "from making any speaking objections" and from coaching Ude at the second deposition. *Id.*

Importantly, the Court overruled Ude's objections that relied on the Shield Law for the most part. It explained that under Ude's "interpretation of the statute, every 'malicious or negligent defamer would have carte blanche to withhold from judicial scrutiny' the identity of any person who contributed to a defamatory story so long as they were also considered a source." *Id.* n. 2 (quoting *Hatchard v. Westinghouse Broad. Co*., 516 Pa. 184, 194 (Pa. 1987)). The Court determined,

> If any reporters/editors are also sources of information for the article in this case, the Shield Law protects that fact from disclosure. [Ude] does not need to link which portions of the article were sourced from reporters/editors. [Ude] does not even need to identify whether any portions of the article were sourced from reporters/editors. However, the Shield Law does not protect the identity of persons who contributed to or worked on the article and *the identity of such persons may not be withheld from disclosure*.

Disc. Ord. at n. 2 (emphasis added). In compliance with the Discovery Order, the parties scheduled a second deposition for Ude.

***Ude's Second Deposition***

Ude's second deposition did not go any better than the first. Ude's Counsel objected to the very first question:

> Q. Mr. Ude, welcome back.
>
> A. Thank you.
>
> Q. You are familiar with the deposition process now from your last deposition, right?
>
> A. Yes.
>
> MR. AMADI: Objection.

Sec. Depo. 6:3–8, ECF No. 108-1. Counsel for Wabote then asked Ude where he lived,

> A. My lawyer said to not answer the question, but I'm sure you have the address of where I live.
>
> Q. What is the address of where you live?
>
> A. You have it. It's right there on the form that you have.
>
> Q. Mr. Ude, am I asking you a question, what is the address of where you live?
>
> MR. AMADI: Objection again.
>
> THE WITNESS: My lawyer said not to answer.
>
> MR. CILENTO: Okay. Then we're going to have to call the judge. Benneth, are you ready to call the judge?
>
> MR. AMADI: Me calling the judge? If you want to call the judge, you call the judge.
>
> MR. CILENTO: Yeah.
>
> MR. AMADI: I'm not calling the judge.
>
> MR. CILENTO: Okay. We have to take -- we have to take a break, and we have to call the judge because he's refusing to answer the question.

*Id.* 9:4–22

The parties called chambers and asked for the Court's intervention. The Court instructed the parties to continue with the deposition and to keep a record of any additional questions that Ude refused to answer.

Before the deposition was finished, Ude's Counsel had objected more than 100 times. *See generally id*. Many of his objections were followed by argument or explanation. For example,

> MR. AMADI: Let me say something. Mr. Cilento, you are not here to repeat the questions you have asked last time, please, so that you continue wasting somebody's time. That's my concern here.

*Id.* 16: 4–7. Other times, Ude's Counsel never gave a reason for his objections. For example,

> Q. Mr. Ude, can you tell me about this article again, the story? And can you tell me your involvement in the story?
>
> MR. AMADI: Objection.
>
> MR. CILENTO: What's your objection?
>
> MR. AMADI: (No verbal response).

*Id.* 28:17–22. He also made several antagonizing comments to opposing counsel. For example,

> MR. AMADI: Let me say something. Mr. Cilento, you are not here to repeat the questions you have asked last time, please, so that you continue wasting somebody's time. That's my concern here.
>
> MR. CILENTO: Benneth, you're the only one wasting time. And if you keep objecting, then we're going to have to keep -- go longer than three hours, so.
>
> MR. AMADI: You will not keep -- you will not go more than three hours here today.
>
> MR. CILENTO: Okay. Well, then maybe we'll go again another day.
>
> MR. AMADI: You'll not have another day at all. You either use the time today, or you'll not use them again, forever.

*Id.* 16:4–17.

Wabote's Counsel asked Ude who the other editors and reporters were that worked on the article. He specified, however, that he was not asking Ude to reveal the sources of the article,

> Q. Who did the bribe money exchange hands from?
>
> A. You want me to give you the name of the sources?
>
> Q. No. I want you to give me the name of who it is alleged handed Mr. Wabote two million dollars in cash; that's the allegation, right?

*Id.* 47:18–23. Wabote's Counsel asked Ude several times who the other reporters and editors were. Each time, however, Ude's Counsel instructed Ude not to answer, claiming that the information was

protected under the Shield Law and the Court's Discovery Order. Wabote's Counsel rephrased the question many times, but Ude still refused to answer:

> Q. Who is the deputy editor-in-chief of Pointblank News?
>
> A. Who is the deputy -- deputy editor-in-chief?
>
> Q. Yeah.
>
> MR. AMADI: I object.
>
> THE WITNESS: I'm not going to give up that name right now.
>
> BY MR. CILENTO:
>
> Q. What do you mean right now?
>
> A. I'm not going to give up the name. I'm not going to release the name.
>
> MR. AMADI: I will object. That's a privilege issue in the case, there's a First Amendment protection there. You know, there are sources of information to the alleged defamation in this case. And he's not going to reveal any source of information. I don't want to go into making speeches here or saying anything to elongate anything, but the Pennsylvania Shield Law protects him from revealing any source of information. The First Amendment to the United States Constitution protects him. And the judge's ruling, in this case, indicates that he should not reveal any source of information. So let's not waste any time on issues bordering on sources of information.
>
> Q. How many editors does Pointblank News have?
>
> A. There are four editors.
>
> Q. What are the names of those four editors?
>
> A. I don't know any of their names.
>
> MR. AMADI: Objection. Privileged.

*Id.* at 19:8–25, 20:1–12.

At one point during the deposition, Wabote's Counsel showed some exhibits to Ude, such as the article at issue, and proceeded to ask questions about the exhibits. Ude's Counsel objected because he had not been given the exhibits beforehand. Wabote's Counsel explained that he was not required to give them to him beforehand and that they were the same exhibits used during the first deposition. Nevertheless, Ude's Counsel continued to object. Eventually, the parties took a short recess so that Wabote's Counsel could share the exhibits before continuing with his questions.

Throughout the deposition, both counsel and Ude often spoke over one another. As a result, the court reporter sometimes had a difficult time understanding what was being said and had to remind them more than five times that only one person should speak at a time. During some moments, Ude, the deponent, actually posed questions to Wabote's Counsel:

> Q. Mr. Ude, just answer my questions. That's it.
>
> A. Now what -- you have to be --
>
> Q. I asked you --
>
> A. -- educated.
>
> Q. -- if there are any documents or evidence.
>
> A. You have to be educated, Mr. Mike. Have you ever been --
>
> Q. Mr. Ude --
>
> Q. -- to Nigeria before?
>
> Q. Mr. Ude, just answer my questions. That's it. I'm going to ask a new question now, okay?
>
> . . .
>
> A. Okay. Mike, let me educate you a little bit because you seems not to be, I don't know, of what's -
>
> Q. I just want --
>
> A. -- how sources -- how --
>
> Q. I just want you to answer the question.
>
> A. No. No –
>
> . . .
>
> Q. Okay. So you don't want to answer the questions?
>
> A. Did you ask your client why he did that? Was that the right thing to do? Your client is already in-- is in court in the United States and is hounding journalists who are supposed to be his own witnesses.
>
> Q. Okay. Well --
>
> A. He is putting them in jail. Did you ask him to do that?
>
> Q. If you're not going to answer the --
>
> A. Mike, did you ask him to arrest the journalist? Did you do that?
>
> Q. Mr. Ude, you are not allowed to ask questions.
>
> A. Did you ask your client -- did you ask your client -- Mike -- Mike, did you ask your client to arrest a journalist or not? Did you do that?

*Id.* 43:6–17, 44:3–8, 101:10–25. Ultimately, Wabote's Counsel stopped the deposition, stating, "Mr. Ude is refusing to answer questions and is being belligerent." *Id.* 102:2–4.

Shortly after Ude's second deposition, both parties filed letter-briefs requesting that the other be sanctioned for their behavior during the second deposition. *See* ECF No.'s 105, 106, 107, 108, and 110. After giving both parties a chance to file briefs on the matter, it scheduled a telephone conference to hear oral argument. *See* ECF No. 111. The Court directed counsel to "be prepared to discuss what occurred during Mr. Ude's second deposition" and to "present argument . . . on why the other party should be sanctioned and what sanctions would be appropriate." *Id.*

Counsel for both parties attended the telephone conference.[4] Each presented argument on why the other should be sanctioned, what sanctions would be appropriate, and why the other party's requests should be denied.

## III. LEGAL STANDARDS

"The practice of law is premised on civility and cooperation." *Williams v. Benshetrit*, No. CV 19-797, 2020 WL 3315982, at *4 (E.D. Pa. June 18, 2020). Since this concept is so crucial to the function of our legal system, courts have the inherent power to sanction parties when necessary for behaving badly. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (holding that among a court's inherent powers is "the ability to fashion an appropriate sanction for conduct which abuses the judicial process"). "The decision to impose sanctions . . . and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court." *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 538 (3d Cir. 2007).

[4] In addition to Mr. Michael Cilento, his co-counsel, Mr. Joshua Macel, also joined the conference for Wabote. Also, in addition to Mr. Benneth Amadi, his co-counsel, Mr. Obinna Abara, joined the conference for Ude.

A court's power to sanction parties does not end at the courtroom doors. Indeed, the Federal Rules of Civil Procedure state that courts may sanction parties for unprofessional conduct during the discovery stage. Two such rules are applicable in this case.

**a. Federal Rule of Civil Procedure 30—Depositions**

Rule 30 of the Federal Rules of Civil Procedure governs perhaps the most important discovery tool—depositions. In short, depositions are "question-and-answer sessions between a lawyer and a witness aimed at uncovering the facts in a lawsuit." *Hall v. Clifton Precision, a Div. of Litton Sys., Inc.*, 150 F.R.D. 525, 531 (E.D. Pa. 1993). Rule 30 regulates who may be deposed, how long a deposition may last, and other matters related to depositions. *See* Fed. R. Civ. P. 30.

When being deposed, a deponent must generally answer any and all questions posed to him by the attorney conducting the deposition. *See id.* 30(c)(2) (explaining that parties may object to a question "but the examination still proceeds" and the question must still be answered); *see also Smith, Kline & French Lab'ys v. Lannett Co.*, 2 F.R.D. 561, 562 (E.D. Pa. 1942) ("a party may not refuse, upon deposition, to reveal matters specifically within the scope of the examination permitted by the rules"); *M & W Elec. Mfg. Co. v. Gatto Elec. Supply Co*., 38 F.R.D. 393, 396 (M.D. Pa. 1965).

Counsel for the deponent may object to questions, but "it must be done within the rules." *Cmty. Ass'n Underwriters of Am., Inc. v. Queensboro Flooring Corp*., No. 3:10-CV-1559, 2014 WL 3055358, at *8 (M.D. Pa. July 3, 2014). Objections during a deposition must be made "concisely in a nonargumentative and nonsuggestive manner." Fed. R. Civ. P. 30(c)(2). After the objection is made, the deponent must still answer the question. *Hopkins v. NewDay Fin., LLC*, No. CIV. 07-3679, 2008 WL 4657822, at *3 (E.D. Pa. Oct. 17, 2008). Counsel should avoid excessive objections because they "disrupt the orderly question and answer flow of a deposition and are obstructive to its purpose." *Animal Legal Def. Fund v. Lucas*, No. CV 19-40, 2020 WL 7027609, at *3 (W.D. Pa.

Nov. 30, 2020). Indeed, "[o]bjections to relevance or materiality need not be made at deposition, as they are preserved for trial." *Cmty. Ass'n Underwriters of Am., Inc.*, No. 3:10-CV-1559, 2014 WL 3055358, at *8 (M.D. Pa. July 3, 2014). When counsel feels that he must object, the objection "must be succinct and verbally economical, stating the basis of the objection and nothing more." *Id.* at *8 (M.D. Pa. July 3, 2014) (quoting *Birdine v. City of Coatesville*, 225 F.R.D. 157, 158 (E.D. Pa. 2004)).

Counsel may instruct the deponent not to answer a question in only three circumstances: (1) "when necessary to preserve a privilege"; (2) "to enforce a limitation ordered by the court"; and (3) "to present a motion under Rule 30(d)(3)[5]." Fed. R. Civ. P. 30(c)(2). "[T]he fact that a question is repetitive or irrelevant is not an appropriate ground for instructing a witness not to answer a question." *Hearst/ABC-Viacom Ent. Servs. v. Goodway Mktg., Inc.*, 145 F.R.D. 59, 63 (E.D. Pa. 1992).

For the most part, counsel should remain silent throughout the deposition unless he is making a concise objection or instructing the deponent not to answer for one of the three reasons given above. For example, "lawyers are strictly prohibited from making any comments, either on or off the record, which might suggest or limit a witness's answer." *Hall*, 150 F.R.D. 525, 531 (E.D. Pa. 1993). Nor may lawyers present argument or make speaking objections during a deposition. *See Cmty. Ass'n Underwriters of Am., Inc.*, No. 3:10-CV-1559, 2014 WL 3055358, at *8 (M.D. Pa. July 3, 2014) (explaining that "speaking objections" are improper because, among other reasons, they "suggest to the deponent how to answer a pending question").

Counsel for both parties, and the parties themselves, are of course expected to be professional and courteous throughout a deposition. *See York Grp., Inc. v. Pontone*, No. 2:10-CV-

5 Under Rule 30(d)(3), a party may "move to terminate or limit" a deposition if "it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A).

1078-JFC, 2012 WL 12895533, at *1 (W.D. Pa. Oct. 24, 2012) ("It is well settled that in the course of a deposition, an attorney is prohibited from engaging in so-called Rambo litigation."). Indeed, counsel "should never forget that even though the deposition may be taking place far from a real courtroom, with no black-robed overseer peering down upon them, as long as the deposition is conducted under the caption of [the] court and proceeding under the authority of the rules of [the] court, counsel are operating as officers of [the] court." *Hall*, 150 F.R.D., at 531.

Finally, Rule 30 states that courts "may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).

**b. Federal Rule of Civil Procedure 37**

Under Rule 37, "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). Sanctions under this provision include, at a minimum, an order requiring "the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id.* 37(b)(2)(C).

## IV. ANALYSIS

The parties' interpretation of events falls on opposite ends of the spectrum. According to Wabote, Ude is a purveyor of fake news, willing to publish anything on his blog whether it is true or not so long as he gets a pay day. Ude, on the other hand, maintains that he is a legitimate journalist who risks his life by publishing articles that expose shady characters such as Wabote.

Ude and Wabote's shared animosity has extended to their counsel who have become increasingly vexatious towards one another as litigation continues. With both sides claiming

innocence and pointing their finger at the other, the Court must rely on the transcript of the second deposition to find the truth as best it can.

After reviewing the transcript thoroughly, the Court determines that, at least this time, Wabote's story is closer to reality than Ude's. The Court first discusses, and denies, Ude's request for sanctions. It then addresses Wabote's request and highlights the behavior that warrants sanctions for both Ude's Counsel and Ude himself. Last, the Court analyzes what sanctions are appropriate under the circumstances.

**a. Ude's request for sanctions is meritless.**

Ude gives four main reasons why Wabote and Wabote's Counsel should be sanctioned. None of Ude's arguments, however, are supported by the transcript.

First, Ude alleges that Wabote's Counsel was unprepared for the deposition. The Court disagrees. Wabote's Counsel asked a number of questions and had several exhibits to go over. Wabote's Counsel never asked for a break to collect his thoughts. Nor did he take any time to review his notes between questions. The transcript therefore shows that Wabote's Counsel was prepared for the deposition.

Second, Ude takes issue with the fact that Wabote's Counsel did not share the exhibits with him before the deposition started, but Ude's Counsel has not pointed to any rule or case law that suggests a deposing attorney must share exhibits with opposing counsel before a deposition. Instead, a deposing attorney need only share exhibits with opposing counsel once he starts a line of questioning regarding the exhibits, which is exactly what Wabote's Counsel did. *See Hall*, 150 F.R.D. 525, 529 (E.D. Pa. 1993). "[T]here is no valid reason why the lawyer and the witness should have to confer about the document before the witness answers questions about it." *Id.* Moreover, Ude's Counsel was already aware of the exhibits because they had been used in Ude's first

deposition. One of the exhibits was the very article at the heart of this case, so Ude's Counsel cannot in good conscience argue that he was not already familiar with it.

Third, Ude's Counsel complains that Wabote's Counsel ended the deposition before he had a chance to cross-examine Ude. However, the right to cross-examine at a deposition is not absolute. *See Derewecki v. Pennsylvania R. Co.*, 353 F.2d 436, 438 (3d Cir. 1965). And any party may terminate a deposition at any time if it is being conducted in bad faith. *See* Fed. R. Civ. P. 30(d)(3). Ude had spent several hours avoiding straight forward questions; he then turned the tables on Wabote's Counsel and started peppering the deposing attorney with questions of his own. Wabote's Counsel told Ude that he was not allowed to ask questions and tried to interject, but he was unable to get a word in. Meanwhile, Ude's Counsel did nothing to corral his client. Given the circumstances, the Court determines that Wabote's Counsel did not act unreasonably by terminating the deposition when he did.

Fourth, Ude makes general allegations that Wabote's Counsel was "very disruptive" and harassed Ude and Ude's Counsel throughout the deposition. This, however, is not reflected in the transcript. While it is true that childish taunts were hurled by both sides, any unprofessional conduct from Wabote's Counsel does not rise to the level of warranting sanctions. Wabote's Counsel did nothing to frustrate the purpose of the deposition.

For the above reasons, the Court denies Ude's request for sanctions.

**b. The conduct of Ude's Counsel and Ude warrants sanctions.**

This Court does not impose sanctions lightly. *See In re Orthopedic Bone Screw Prod. Liab. Litig.*, 193 F.3d 781, 795–96 (3d Cir. 1999) ("The Supreme Court has specifically instructed that courts should be wary of chilling legitimate advocacy by imposing fees too hastily."). Indeed, the Court has already denied multiple requests for sanctions in this case from both sides, which is evidence in itself that the Court is not quick to impose fees.

However, the conduct of Ude's Counsel and Ude during the second deposition warrants sanctions. Not only did they behave unprofessionally, but they directly disobeyed the Court's Discovery Order and frustrated the purpose of Ude's second deposition. The Court first addresses the sanctionable behavior of Ude's Counsel and then the behavior of Ude.

***i. Sanctionable behavior of Ude's Counsel***

After reviewing the transcript of the second deposition, the Court determines that Ude's Counsel disobeyed the Discovery Order and frustrated the purpose of the deposition in five major ways. Since the transcript is littered with examples of his troublesome behavior, the Court gives only one or two examples in this Opinion for each of the sub-sections below.[6]

*1. Excessive and unnecessary objections*

The first, and most apparent misbehavior is how often Ude's Counsel raised objections. Incredibly, he objected to the standard question of whether Ude was "familiar with the deposition process." Sec. Depo. 6:5–8. Next, he objected to the simple question of whether Ude understood "that the judge ha[d] ordered [him to] answer all questions" unless his "attorney directs" otherwise. *Id.* 6:12–16. He also objected to the question of whether Ude was "prepared to answer all questions today." *Id.* 6:17–20.

This pattern of constant objections continued throughout the deposition. In all, he objected more than 100 times. He often objected more than once to the same question,

> Q. When was the last time you were I Nigeria?
> MR. AMADI: Objection.
> THE WITNESS: The last time I was in Nigeria—
> MR. AMADI: Objection.
>
> …
>
> MR. AMADI: I object again.

---

6 The Court notes that additional examples have already been given above. See supra section II.

Q. Mr. Ude, you have to answer.

A. What was the question again, please?

Q. The question is what was your involvement in this story, the Exhibit 1 story we're looking at?

MR. AMADI: I object again.

…

Q. Did you write this story?

MR. AMADI: Objection

Q. The Wabote story at Exhibit 1 that we're looking at, did you write this story?

A. Yes, I – I wrote most of it.

MR. AMADI: I Object.

Q. You wrote most of it, you said?

MR. AMADI: I object again.

*Id.* 15:23–25, 16:1; 29:2–7; 52:16–23.

Moreover, Ude's Counsel rarely gave a reason for his objections. Once when asked what his objection was for, Ude's Counsel responded, "I don't have to tell you what my objection is." *Id.* 84:18–19.

When he did give a reason, it was almost never for form. Instead, he objected because he believed the questions were irrelevant or had already been asked. However, these types of objections were unnecessary because they were reserved for trial. Additionally, there is no need to object to the same question over and over. If Ude's Counsel felt that he needed to object, he should have objected, given a concise reason for the objection, and then allowed Ude to answer the question.

Ude's Counsel impeded, delayed, and frustrated the fair examination of Ude with the sheer number of his objections, many of which were totally unnecessary. He also disobeyed the Court's order, which instructed him that all objections should be reserved for trial except for objections to form. This conduct alone could warrant sanctions. *See Clarity Sports Int'l LLC v. Redland Sports*,

No. 1:19-CV-00305, 2021 WL 2981038, at *3 (M.D. Pa. July 15, 2021) (sanctioning for "an abundance of improper interruptions and objections").

*2. Interruptions, speaking objections, and making arguments*

The purpose of the second deposition was for Wabote's Counsel to ask Ude questions. However, a surprising percentage of the transcript can be attributed to Ude's Counsel.

Ude's Counsel interrupted the deposition from the very beginning. Immediately after the court reporter swore in the witness, Ude's Counsel interrupted: "There's something I want to say. Please note exactly the time we started. He has three hours to do the deposition." *Id.* 5:23–25. Such an interruption could be overlooked if it were not for the many more that followed. Throughout the deposition, Ude's Counsel made comments and frequently asked for more time to finish what he had to say. For example, the transcript reveals he said things such as, "—so please let me finish my speech," *id.* 10:22, or "[l]et me say something," *id.* 16:4, multiple times, followed by a lengthy colloquy.

In addition, Ude's Counsel made multiple speaking objections even though the Court specifically prohibited him "from making any speaking objections." For example,

> MR. AMADI: I will object. That's a privilege issue in the case, there's a First Amendment protection there. You know, there are sources of information to the alleged defamation in this case. And he's not going to reveal any source of information.
>
> I don't want to go into making speeches here or saying anything to elongate anything, but the Pennsylvania Shield Law protects him from revealing any source of information. The First Amendment to the United States Constitution protects him. And the judge's ruling, in this case, indicates that he should not reveal any source of information. So let's not waste any time on issues bordering on sources of information.

*Id.* 19:19–25, 20:1–7. Not only did these speaking objections disobey the Discovery Order, they also could have coached Ude in his answers or in his decision not to answer certain questions.

At other times during the deposition, Ude's Counsel essentially presented argument. For example, he made one particularly lengthy argument about, among other things, how Wabote's Counsel "has been disrupting the deposition." *Id.* 25:20–21. The Court does not quote the entire section here because it takes up more than 20 lines worth of the transcript. *See id.* 25:18–25, 26:1–14.

Suffice it to say, Ude's Counsel disobeyed the Discovery Order and impeded, delayed, and frustrated the fair examination of Ude with improper interruptions, speaking objections, and arguments.

*3. Improperly advising Ude not to answer*

There are only three circumstances in which an attorney may instruct a deponent not to answer a question posed during a deposition—to preserve a privilege, to enforce a limitation ordered by the court, and to present a motion under Rule 30(d). Ude's Counsel, however, improperly advised Ude not to answer questions when none of these three circumstances existed.

For example, he told Ude, "don't answer any questions in relation to that article" because Wabote's Counsel had not shared the exhibit with him prior. *Id.* 24:23–24. He also instructed Ude not to answer any questions that he had already answered in the first deposition. *Id.* 86:3–8. He also instructed Ude not to answer any questions regarding Sylva, the plaintiff suing Ude for defamation regarding the same article in a related case. The Court could give other examples if it wished, but none of them involve any of the three proper reasons for refusing to answer questions provided in the rules.

Surprisingly, Ude's Counsel told Ude not to answer any questions about editors and reporters who may have worked on the article, which was the very reason that the Court ordered the second deposition to take place. Even more surprising though, was the reason that Ude's Counsel

gave for not answering. He raised the Shield Law again and argued that the Discovery Order supported such an objection. However, this is directly contrary to the Discovery Order.

The Court rejected Ude's argument regarding the Shield Law in the Discovery Order and mostly overruled his objection to revealing the names of editors and reporters for Point Blank News. The Court explained in the Discovery Order that Ude did not need to reveal whether any editors or reporters were *also* sources for the article. However, the Court ordered that "the Shield Law does not protect the identity of persons who contributed to or worked on the article and the identity of such persons may not be withheld from disclosure."

For the sake of clarity, the Court reiterates now that the identity of any editors or reporters who worked on the article is not protected by the Shield Law or any other privilege. The following question would therefore be unobjectionable: "Who are the reporters that helped write the article?" This is a different question than, "did any reporters also act as sources for the article?" Of course, Ude's Counsel could still object to the prior question if he wishes, and the objection would be noted. But then Ude would be expected to answer, and the deposition should proceed. Ude's Counsel therefore disobeyed the Discovery Order by instructing Ude not to answer questions about the editors and reporters who work for Point Blank News.

*4. Discourteous and abusive behavior*

In addition to the above improper conduct, the transcript reveals a pattern of discourteous and abusive behavior on the part of Ude's Counsel. For example, he made numerous unprofessional comments to Wabote's Counsel throughout the deposition: "you continue wasting somebody's time."; "You will not have another day at all. You either use the time today, or you'll not use them again, forever."; "You waste time."; "I didn't come here to become dumb."; "If you don't have any further questions, please back off and close this."; "Listen to what I say. Don't tell me what I'm allowed to say or not." Sec. Depo. 16:6–7, 16:15–17, 16:25, 54:11, 54:15–16, 79:9–10.

The Court doubts that Ude's Counsel would have made the same unprofessional comments in the courtroom. Ude's Counsel is an officer of the court whether he is in the actual courtroom or defending a deposition many miles away from the court. Such behavior on its own is sanctionable. *See Marino v. Usher*, No. 11-6811, 2013 WL 12146386, at *2 (E.D. Pa. Nov. 19, 2013) (explaining that similar behavior "appears to violate Rule 30 and RPC 3.5(d)").

Again, the Court could go on. However, the transcript is so full of examples of Ude's Counsel frustrating the purpose of the deposition "that the Court finds it unnecessary and redundant to identify exemplary selections," *Cmty. Ass'n Underwriters of Am., Inc*, No. 3:10-CV-1559, 2014 WL 3055358, at *8 (M.D. Pa. July 3, 2014).

***ii. Ude's sanctionable conduct***

In addition to his counsel, the Court determines that Ude himself also frustrated the purpose of his own deposition and disobeyed the Discovery Order in two major ways.

First, Ude refused to answer a number of questions. For example, when asked who the deputy editor-in-chief for Point Blank News is, he said, "I'm not going to give up that name right now." Sec. Depo. 19:13–14. When asked who the reporter was that reported on the article, he said, "I don't want to release the name – tell his name." *Id.* 42:7. Ude even stated at one point, "I'll not be answering any question anymore." *Id.* 58:25. Ude's refusal to answer straightforward questions frustrated the purpose of the deposition and was contrary to the Court's Discovery Order, in which the Court ordered Ude to answer all questions posed to him, including questions about editors and reporters for Point Blank News.

Second, Ude impeded the flow of the deposition by asking his own questions and by lecturing the deposing counsel on various topics. A deponent may obviously ask certain questions while being deposed. For example, a deponent may ask to have a question repeated or clarified.

However, Ude's questions went far beyond what is appropriate for a deponent to ask while being deposed:

> A. Did you ask your client why he did that? Was that the right thing to do? Your client is already in-- is in court in the United States and is hounding journalists who are supposed to be his own witnesses.
>
> Q. Okay. Well --
>
> A. He is putting them in jail. Did you ask him to do that?
>
> Q. If you're not going to answer the --
>
> A. Mike, did you ask him to arrest the journalist? Did you do that?
>
> Q. Mr. Ude, you are not allowed to ask questions.
>
> A. Did you ask your client -- did you ask your client -- Mike -- Mike, did you ask your client to arrest a journalist or not? Did you do that?

*Id.* 101:10–25. Wabote's counsel also had to stop Ude from making long colloquies multiple times,

> Q. So Mr. Ude –
>
> A. Let me ask you a question.
>
> Q. No –
>
> A. You're a lawyer—
>
> Q. No –
>
> A. You violate –
>
> Q. No Mr. Ude –
>
> A. – your legal tender, your legal stuff. No action was taken. Shouldn't there be something wrong?
>
> Q. Mr. Ude –
>
> A. Come on.
>
> Q. You're here to answer my questions, okay?
>
> A. Well, then I – listen. Mike, you don't know how it was. And I'm explaining to you that your client issued query didn't take an action for months. For years. And then, issue came over of bribery, and then he changed information.
>
> The same issue for which he didn't take an action is finally in the Nigerian Senate, for which he's been investigated for not taking an action. He – he said Saipem –Saipem violated Nigerian law. He –
>
> Q. Mr. Ude, that's enough.
>
> A. That's enough?

*Id.* 46:3–25.

Ude was discourteous as well. For example, he told Wabote's Counsel that "you don't want to hear the truth," and "[t]he truth is, that you'll be paid – you'll be paid from stolen money to defend criminals." *Id.* 74:11–14.

For the sake of brevity, the Court does not cite the many more instances when Ude acted in a way that frustrated the purpose of the deposition. Needless to say, in addition to Ude's Counsel, Ude's conduct warrants sanctions as well.

Having determined that Ude and his counsel frustrated the purpose of the second deposition and disobeyed the Court's Discovery Order, the next step is to decide what sanctions will be imposed.

**c. Monetary Sanctions**[7]

Wabote suggests a variety of sanctions, including revoking Ude's Counsel's pro hac vice admission for this case. The Court, however, determines that monetary sanctions will suffice for now. It also grants leave to Wabote to depose Ude for a third time if he wishes to do so.

Monetary sanctions "should be specifically related to expenses incurred as a result of the [behavior]" that warrants the sanctions. *See Cmty. Ass'n Underwriters of Am., Inc.*, No. 3:10-CV-1559, 2014 WL 3055358, at *10 (M.D. Pa. July 3, 2014). Moreover, the amount of monetary sanctions "should be guided by equitable considerations." *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 195 (3d Cir. 1988). The Court may also allocate the percentage of monetary sanctions between counsel and the party depending on their level of fault. *See Republic of the Philippines v. Westinghouse Elec. Corp*., 43 F.3d 65, 74 (3d Cir. 1994); *see also Cmty. Ass'n*

[7] Before a court imposes sanctions, the "Due Process Clause of the Fifth Amendment requires a federal court to provide notice and an opportunity to be heard." *Martin v. Brown*, 63 F.3d 1252, 1262 (3d Cir. 1995) (footnote omitted). The Court satisfied this requirement by giving both parties an opportunity to submit briefs on the matter and make oral argument.

*Underwriters of Am., Inc.*, No. 3:10-CV-1559, 2014 WL 3055358, at *11 (M.D. Pa. July 3, 2014) (holding counsel and party jointly responsible for the payment of sanctions).

Given that Ude and his counsel's conduct precipitated Wabote's current request, the Court determines that an award of reasonable expenses and attorney's fees in connection with the request is warranted. Should Wabote choose to depose Ude for a third time, then Wabote is also awarded reasonable expenses and attorney's fees in connection with preparing for and taking a third deposition because a third deposition would not be needed if Ude and his counsel had obeyed the Discovery Order.

The Court determines that Ude's Counsel is responsible for a majority of the conduct that frustrated the second deposition and for disobeying the Discovery Order. In addition, the Court holds Ude's Counsel to a higher standard than Ude because he is an officer of the court. In other words, he should know better. Nevertheless, Ude must be assigned at least some portion of the blame because his behavior impeded the deposition too, and he also disobeyed the Discovery Order. With this in mind, the Court determines that Ude's Counsel is responsible for 90% of the final total monetary sanctions and Ude is responsible for the remaining 10%.[8]

Ude and his counsel may find these sanctions harsh. However, the Court notes that this is a lenient punishment compared to other alternatives. *See Brophy v. Hartley Doering Grp., Inc.*, No. 1:18-CV-02169, 2020 WL 3172706, at *5 (M.D. Pa. June 15, 2020) (explaining that appropriate sanctions for similar behavior includes prohibiting a party from supporting or opposing certain claims or defenses, striking pleadings in whole or in part, staying proceedings, dismissing the action, rendering a default judgment, or holding the party in contempt of court").

The Court reminds both counsel "that practice before this court is governed both by the Pennsylvania Rules of Professional Conduct" and the Eastern District Local Rules of Civil

---

[8] The details of the sanctions imposed are outlined in the accompanying Order.

Procedure. *Clarity Sports Int'l LLC*, No. 1:19-CV-00305, 2021 WL 2981038, at *5 (M.D. Pa. July 15, 2021). "All counsel are admonished that sanctions for any future misconduct in this litigation may reflect the effectiveness, or lack thereof, of the present corrective action." *Id.*

## V. CONCLUSION

The Court denies Ude's request for sanctions because any misbehavior on the part of Wabote's Counsel does not rise to the level of warranting sanctions.

The Court imposes monetary sanctions on both Ude and Ude's Counsel because they disobeyed the Discovery Order and frustrated the purpose of Ude's second deposition. It also grants Wabote leave to depose Ude again if he wishes to do so.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*__________
JOSEPH F. LEESON, JR.
United States District Judge